UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES M. WASHINGTON,

     Plaintiff,

v.

Case No. 2:21-cv-12202
District Judge Denise Page Hood
Magistrate Judge Kimberly G. Altman

HEIDI E. WASHINGTON,
KENNETH McKEE, WILLIS
CHAPMAN, GEORGE
STEPHENSON, MALANIE
WRIGHT, UNKNOWN SANDERS,
and KRISTOPHER STEECE,

     Defendants.

_____/

## REPORT AND RECOMMENDATION TO GRANT DEFENDANT'S MOTION TO DISMISS OR ALTERNATIVELY FOR SUMMARY JUDGMENT (ECF No. 15)[1]

### I.  Introduction

This is a prisoner civil rights case under 42 U.S.C. § 1983.  Plaintiff James Washington (Washington), proceeding *pro se* and *in forma pauperis*, filed a complaint naming the above listed defendants, who are employed by the Michigan Department of Corrections (MDOC).  (ECF No. 1).  He alleges that defendants

---

[1] Upon review of the parties' papers, the Court deems this matter appropriate for decision without oral argument.  *See* Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(2).

1

failed to implement appropriate controls to protect him from contracting COVID-19 in March 2020, in violation of the Eighth Amendment.  (*Id*.).  Under 28 U.S.C. § 636(b), all pretrial matters were referred to the undersigned.  (ECF No. 16).

Before the Court is defendants' motion to dismiss the complaint for failure to state a claim or alternatively for summary judgment on the basis of exhaustion. (ECF No. 15).  The motion is fully briefed.  (ECF Nos. 20, 23).  For the reasons stated below, it is RECOMMENDED that defendants' motion be GRANTED, and that the complaint be DISMISSED WITHOUT PREJUDICE as to Melanie Wright (Wright) and Unknown Sanders (Sanders), and DISMISSED WITH PREJUDICE as to the remaining defendants.

## II.    Washington's Allegations

During the onset of the COVID-19 pandemic in March 2020, Washington was a prisoner in MDOC custody incarcerated at Macomb Correctional Facility (MRF).  He alleges that MRF failed to implement guidelines from the Centers for Disease Control and Prevention (CDC) to prevent the spread of COVID-19.  The guidelines included recommendations regarding social distancing, hygiene, and disinfection .  (ECF No. 1, PageID.6).

On March 10, 2020, Washington was released from solitary confinement and sent to housing unit 1.  Upon arrival, he saw officers wearing masks but thought nothing of it.  Then, on March 17, 2020, Washington was housed with an

2

inmate named "Perry," who was coughing, had a fever, and "was laying down all day[.]"  (*Id.*, PageID.7).  Perry told him that he had the flu.  (*Id.*).  Washington spoke with various nursing staff, who came to housing unit 1 once or twice per day to provide vitamins to certain "at-risk" prisoners; he asked them what was being done to prevent the spread of COVID-19, and they told him that COVID-19 had not yet reached Michigan and that the prisoners they were visiting had flu symptoms.  (*Id.*, PageID.7-8).

On March 26, 2020, Washington began exhibiting symptoms of COVID-19, including "major headaches," excessive coughing, chest pain, dizziness, diarrhea, fevers, and cold sweats.  (*Id.*, PageID.8).  He tested positive for the virus and was sent to solitary confinement.  Two days later, he was released from solitary confinement and sent to another housing unit where he was housed with another COVID-19 positive prisoner.  (*Id.*).  He alleges that he was unable to socially distance in the cell, and that correctional officers Wright and Sanders did not provide cleaning supplies or soap to inmates to prevent the spread of COVID-19.  (*Id.*).

On March 28, 2020, Washington sent kites[2] to MDOC Director Heidi

---

[2] A "kite" is a form that allows inmates to communicate and get information about "just about anything," including court dates, visitors, lawyers' information, requests, complaints, or medical assistance.  *See, e.g.*, *Meirs v. Ottawa Cnty.*, 821 F. App'x 445, 448 (6th Cir. 2020).

Washington, Deputy MDOC Director Kenneth McKee (McKee), MRF Warden

Willis Chapman (Chapman), Deputy Warden George Stephenson (Stephenson),

and Assistant Deputy Warden Kristopher Steece (Steece), based on their deliberate

indifference to MDOC Policy Directive (PD) 03.03.130(I)(2), which requires

prisoners to be placed in a single occupancy when necessary to ensure the safety of

the prisoner and others. (*Id.*, PageID.9). Washington then grieved the issue in

April 2020, with the final Step III grievance being rejected on July 27, 2020. (*Id.*,

PageID.10).

Washington states that on or around April 13, 2020, the Macomb County

Executive declared an emergency regarding COVID-19, and that on or around

April 18, 2020, Governor Gretchen Whitmer issued an executive order restricting

gatherings of crowds in conformity with the CDC and federal taskforce response

team's recommendations. (*Id.*, PageID.8-9).

Washington alleges that prisoners at MRF sleep within three feet of each

other, are denied or have delayed medical treatment, do not have adequate access

to soap or cleaning supplies, and are unable to socially distance from prisoners

with COVID-19 symptoms. (*Id.*, PageID.10). He further alleges that these

conditions remained substantially the same from February 2020 to June 2021,

causing the prison population to become infected and reinfected with COVID-19

continuously. (*Id.*, PageID.11-12).

4

III.     Standards of Review

A.     Motion to Dismiss

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action ..."). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Furthermore, the Court holds *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520

(1972).  However, even in pleadings drafted by *pro se* parties, " 'courts should not have to guess at the nature of the claim asserted.' " *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-977 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).  Moreover, "courts may not rewrite a complaint to include claims that were never presented ... nor may courts construct the Plaintiff's legal arguments for him.... [N]either may the Court 'conjure up unpled allegations[.]' " *Rogers v. Detroit Police Dept.*, 595 F. Supp. 2d 757, 766 (E.D. Mich. 2009) (Ludington, J., adopting report and recommendation of Binder, M.J.).

### B.      Motion for Summary Judgment

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome of the case under governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of material fact exists. . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotation marks omitted); cf. Fed. R. Civ. P. 56(e)(2)

(providing that if a party "fails to properly address another party's assertion of fact," the court may "consider the fact undisputed for purposes of the motion"). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.' " *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The fact that Washington is *pro se* does not reduce his obligations under Rule 56.  Rather, "liberal treatment of pro se pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006).  Additionally, "once a case has progressed to the summary judgment stage, as is true here, the liberal pleading standards under the Federal Rules are inapplicable." *J.H. v. Williamson Cnty.*, 951 F.3d 709, 722 (6th Cir. 2020) (quoting *Tucker v. Union of Needletrades, Indus., & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005)) (cleaned up).

IV.   Analysis

A.   Motion for Summary Judgment on Exhaustion of Administrative Remedies

1.   Standard

The Prison Litigation Reform Act (PLRA) requires prisoners to "properly" exhaust all "available" administrative remedies before filing a lawsuit challenging prison conditions.  42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 88-90, 93

(2006). Proper exhaustion of administrative remedies "means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Woodford*, 548 U.S. at 90 (emphasis in original) (internal quotation marks and citations omitted). Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court and produces a useful administrative record. *Jones v. Bock*, 549 U.S. 199, 204 (2007). The PLRA does not detail what "proper exhaustion" entails because "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id*. at 218.

"Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence." *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015). But a prisoner countering a motion alleging failure to exhaust "must offer competent and specific evidence showing that he indeed exhausted his remedies, or was otherwise excused from doing so." *Sango v. Johnson*, No. 13-12808, 2014 WL 8186701, at *5 (E.D. Mich. Oct. 29, 2014), *report and recommendation adopted*, 2015 WL 1245969 (E.D. Mich. Mar. 18, 2015). Granting summary judgment because of a failure to exhaust administrative remedies is not on the merits and thus requires dismissal without prejudice. *Adams v. Smith*, 166 F. App'x 201, 204 (6th Cir. 2006).

The MDOC has established a three-step process to review and resolve

8

prisoner grievances.  "Under the [Michigan] Department of Corrections'

procedural rules, inmates must include the '[d]ates, times, places and names of all

those involved in the issue being grieved' in their initial grievance." *Reed-Bey v.*

*Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010).  As noted by the Court in

*Woodford*, one of the purposes of requiring proper exhaustion is to "provide[ ]

prisons with a fair opportunity to correct their own errors." *Woodford*, 548 U.S. at

94.  To be sufficient, a grievance need not "allege a specific legal theory or facts

that correspond to all the required elements of a particular legal theory." *Burton v.*

*Jones*, 321 F.3d 569, 575 (6th Cir. 2003) *abrogated with respect to other principles*

*by Jones v. Bock*, 549 U.S. 199 (2007).  Nonetheless, the grievance must give "fair

notice of the alleged mistreatment or misconduct that forms the basis of the

constitutional or statutory claim made against a defendant in a prisoner's

complaint." *Id.*

Under MDOC Policy Directive 03.02.130, prisoners must provide the

following information at Step I of the grievance process: "The issues should be

stated briefly but concisely.  Information provided is to be limited to the facts

involving the issue being grieved (i.e., who, what, when, where, why, how).  Dates,

times, places, and names of all those involved in the issue being grieved are to be

included."  MDOC PD 03.02.130 ¶ S (underlining omitted).

Furthermore, MDOC Policy Directive also 03.02.130 sets forth time limits

regarding the three-step grievance process.

> Inmates must first attempt to informally resolve a grievable issue within two business days of becoming aware of the issue, and then may file a Step I grievance about any unresolved issues with a grievance coordinator within five business days of the attempted informal resolution.  If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due.  If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same procedure. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due.

*Moses v. Campbell*, No. 20-cv-13366, 2022 WL 2805145, at *3 (E.D. Mich. July 18, 2022) (internal citations omitted).  "Step III grievances are 'generally' responded to within sixty (60) days."  *Johnson v. Burt*, No. 1:20-cv-802, 2021 WL 3476449, at *3 (W.D. Mich. June 14, 2021), *report and recommendation adopted*, 2021 WL 3473483 (W.D. Mich. Aug. 6, 2021) (citing MDOC PD 03.02.130 ¶ II). "The grievance process is exhausted once the final response is issued in Step III." *Parker v. Turner*, No. 20-12794, 2022 WL 1787037, at *2 (E.D. Mich. June 1, 2022).

### 2.    Discussion

Defendants argue that Washington did not exhaust any claims against them, as he did not name them at Step I of any grievance that was exhausted through Step III.  They attach to their motion a Step III Grievance Report, from January 1,

10

2015 to November 29, 2021, which reflects that Washington took one grievance

through Step III of the grievance process, MRF-20-04-0592-27z (MRF-0592).

(ECF No. 15-3).  MRF-0592 was filed against Heidi Washington, McKee,

Chapman, Stephenson, and Steece, and states in relevant part:

> Based on all the above parties becoming [deliberately indifferent] to my
> health and safety by recklessly disregarding the CDC and Governor
> Gretchen Whitmer['s] recommendation of the social distancing and the
> implementing [procedures] and the protocol to combat transmission
> and spreading of Covid-19 which has resulted in this Grievance being
> filed and my health being infected [sic] on 03-26-2020.

(ECF No. 15-3, PageID.137).

MRF-0592 was denied at Step I as a "non-grievable issue." (*Id*.,

PageID.138).  The MDOC stated that "[g]rievances may be submitted regarding

alleged violations of policy or procedure or unsatisfactory conditions of

confinement which directly affect the grievant[.]" (*Id*.).  The rejection was upheld

at Step II and Step III.  (*Id*., PageID.134, 136).

Defendants argue that because MRF-0592 was rejected for failure to adhere

to grievance regulations, rather than being denied on the merits, Washington's

claims are unexhausted.

Courts have held that a grievance that has been explicitly rejected for a

procedural reason and therefore not decided on its merits is unexhausted. *See*

*Reeves v. Salisbury*, No. 11-CV-11830, 2012 WL 3206399, at *5 (E.D. Mich. Jan.

30, 2012), *report and recommendation adopted in relevant part*, 2012 WL

3151594 (E.D. Mich. Aug. 2, 2012).  But "the Court is not required to blindly

accept the state's application of the procedural rule."  *Id*.  Exhaustion of

administrative remedies means "using all steps that the agency holds out, and

doing so properly."  *Woodford*, 548 U.S. at 90; *see also Williams v. Winn*, No. 18-

11060, 2019 WL 2252012 at *6 (E.D. Mich. Feb. 27, 2019) ("The rejection of a

grievance is not, however, the end of the analysis.  It is appropriate for the Court to

review the prison official's administration of the state grievance procedure."),

*report and recommendation adopted*, 2019 WL 1417166 (E.D. Mich. Mar. 29,

2019).

    Defendants allege that Washington's grievance failed to exhaust his

remedies against Wright and Sanders because it did not name them or suggest that

anyone in their roles violated his constitutional rights.  Washington contends that

his attempts to exhaust his claims against Wright and Sanders were thwarted.  He

states that "[u]pon information and belief, the MRF Grievance Coordinator has

ignored or rejected every meritorious grievance regarding COVID."  (ECF No. 20,

PageID.152).  However, "[a] prisoner's subjective belief that the grievance process

would be ineffective cannot excuse failure to exhaust the prison grievance

procedure prior to filing suit."  *Stevens v. Potila*, No. 14-CV-10863, 2015 WL

1245889, at *3 (E.D. Mich. Mar. 18, 2015) (citing *Napier v. Laurel Cnty., Ky.*, 636

F.3d 218, 222 (6th Cir. 2011) ("To further the purposes behind the PLRA,

exhaustion is required even if the prisoner subjectively believes the remedy is not available, even when the state cannot grant the particular relief requested, and even where the prisoner[ ] believes the procedure to be ineffectual or futile.") (internal quotation marks and citations omitted)).  Washington's argument is also belied by the fact that he did attempt to exhaust his claims in MRF-0592, and that he did not name Wright or Sanders or place them on notice in this grievance.  *See Reed-Bey*, 603 F.3d at 324.  Thus, his claims are unexhausted as to Wright and Sanders.

As to the other defendants, they argue that Washington's grievance was properly rejected under MDOC PD 03.02.130(J)(8) because a prisoner may not grieve the "content of the policy or procedure except as it was specifically applied to the grievant."  (ECF No. 15-2, PageID.124) (emphasis in original).  That section states that "[i]f a prisoner has a concern with the content of a policy or procedure, s/he may direct comments to the Warden's Forum[.]"  (*Id*.).

Washington contends that his grievance specifically outlined issues with *his* conditions of confinement and his health being placed in jeopardy.  (ECF No. 20, PageID.150).  He also contends that MDOC's rejection of his grievance rendered his administrative remedies unavailable, and that if "prison grievance procedures at issue are utterly incapable of responding to a rapidly spreading pandemic like Covid–19, the procedures may be 'unavailable' to meet the plaintiff' purposes, much in the way they would be if prison officials ignored the grievances entirely."

13

citing *Valentine v. Collier*, 206 L. Ed. 2d 930, 140 S. Ct. 1598, 1600–01 (2020)

(SOTOMAYOR, J.).  (*Id*.).

In their reply brief, defendants argue that because Washington grieved

MDOC and MRF policies generally, he was required to exhaust these complaints

through the Warden's Forum prior to bringing suit, citing *Berryman v. Haas*, No.

19-1484, 2020 WL 6325553, at *2 (6th Cir. May 11, 2020), *Moses v. Campbell*,

*supra*, at *7, and *Ryan v. Michigan Dep't of Corr.*, No. 19-12286, 2022 WL

1652305, at *4 (E.D. Mich. May 24, 2022).

In *Berryman*, the Sixth Circuit found that the plaintiffs mistakenly attempted

to exhaust their claims through the Warden's Forum, based on information from

the grievance coordinator, where their complaints were *not* challenging a prison

policy or procedure.  2020 WL 6325553, at *2.  But the court also found that their

question submitted to the Warden's Forum was "so general that it would not satisfy

the exhaustion requirement even assuming that submitting via the Warden's Forum

rather than the proper grievance procedure could be excused in light of the

grievance coordinator's misinformation."  *Id*.

*Berryman* has been cited by three federal courts in Michigan for the

proposition that the Warden's Forum is the proper avenue for relief where a

prisoner complains of prison policy or procedure as a whole, or where the prisoner

is directed to submit his complaint there instead of through a grievance.  *See Al -*

*Shimary v. Winn*, No. 2:21-CV-10403, 2022 WL 3590357, at *4 (E.D. Mich. July 28, 2022), *report and recommendation adopted sub nom. Al-Shimary v. Winn*, 2022 WL 3588017 (E.D. Mich. Aug. 22, 2022); *Moore v. Washington*, No. 19-CV-13616, 2022 WL 543001, at *2 (E.D. Mich. Feb. 23, 2022); *Lopp v. Washington*, No. 1:19-CV-540, 2021 WL 3033266, at *1 (W.D. Mich. July 19, 2021). However, in two of those cases (*Al-Shimary* and *Lopp*), *Berryman* was distinguished because the prisoners in those cases complained of specific constitutional violations that they suffered.

In *Moses v. Campbell*, the prisoner plaintiff complained "that he was unnecessarily exposed to COVID-19 and that he caught it due to staff irresponsibility and gross negligence, and that he suffered injuries including contracting the virus." 2022 WL 2805145 at *7. The district court there found that his complaint was about COVID-19 "as specifically applied to him[,]" and thus, his reporting these issues to the housing unit representative to be addressed at the Warden's Forum did not excuse him from the three-step grievance process. *Id*.

In *Ryan*, a prisoner did not properly exhaust his claim that MDOC policies did not allow him to have a particular typewriter that he needed due to his medical conditions, and the court found that this was an official policy complaint required to be exhausted via the Warden's Forum. 2022 WL 1652305 at *4. But *Ryan* was distinguished in *Shepard v. Artis*, No. 1:22-CV-326, 2022 WL 17812813, at *3

15

(W.D. Mich. Sept. 26, 2022), *report and recommendation adopted*, 2022 WL

17752251 (W.D. Mich. Dec. 19, 2022), where again, a prisoner complained of

MDOC policies relating to COVID-19 *as applied to him*.  The *Shepard* court also

questioned whether "the Warden's Forum reference in Paragraph J(8) of the

grievance policy amounts to an exhaustion requirement for a non-grievable issue."

*Shepard* at *3 n.1.

Here, it appears that Washington's grievance related to prison policies as

they related *to him*.  He specifically referenced defendants' "deliberate

indifference" that caused him to contract COVID-19.  (ECF No. 15-3,

PageID.137).  Based on the foregoing authority, this type of complaint falls under

the MDOC grievance procedures, and Washington attempted to avail himself of

these procedures at all three steps of the process.  The fact that his grievance was

rejected and not decided on the merits in these circumstances cannot be held

against him.  *See Shepard*, 2022 WL 17752251, at *3 (citing cases).  Rather,

MDOC's rejection of his grievance amounts to the remedy being unavailable to

Washington.  *Id*.  Thus, his claims against the defendants named in MRF-0592

have been exhausted.

Alternatively, if this claim were required to have been brought to the

Warden's Forum to be exhausted, defendants have not sustained their burden of

showing that there is no genuine dispute as to this issue.  The Warden's Forum

issue, first referenced in defendants' reply brief, has not been supported to the extent that no reasonable jury could find that Washington brought, or attempted to bring, the issue to the Warden's Forum. Defendants state that "Washington does not claim to have availed himself of the Warden's Forum process," (ECF No. 23, PageID.178), but Washington is not required to affirmatively plead exhaustion. Washington had no notice from defendants' motion that this defense would be raised. Further, though defendants attach the minutes from the April 28, 2020 Warden's Forum meeting (which do not reference Washington's complaints), this exhibit was not supported by a corroborating affidavit. It also does not rule out the possibility that Washington raised the issue in a subsequent Warden's Forum meeting, or that he attempted to raise the issue to his housing unit representative only to be thwarted.

In *Jones v. Heyns*, No. 1:12-CV-01341, 2015 WL 4158749, at *2 (W.D. Mich. July 9, 2015), the court raised a similar issue, noting that "the initial burden of producing evidence [of non-exhaustion] rests with the Defendants." There, the court found no evidence on the record establishing that the plaintiff did not raise his issue at a Warden's Forum. *Id*. Therefore, the court was "inclined to stop short of granting summary judgment where the record is silent, and where the defense has the burden of proof on an affirmative defense such as exhaustion."

Here, the evidence that Washington did not avail himself of the Warden's

Forum is similarly lacking, and because the issue was first raised on reply, Washington was not afforded notice to address the issue in his response.  Thus, even if the Warden's Forum was the proper avenue of exhaustion, defendants have not sustained their burden of showing that Washington's claims as to Heidi Washington, McKee, Chapman, Stephenson, and Steece are unexhausted.  In other words, summary judgment is not appropriate on this ground.

B.      Motion to Dismiss for Failure to State a Claim

Exhaustion aside, Heidi Washington, McKee, Chapman, Stephenson, and Steece also argue that Washington fails to state a viable claim against them.  As noted above, Washington alleges that defendants were deliberately indifferent to his serious medical need to be adequately protected against COVID-19.  Defendants counter that their response to the COVID-19 pandemic in the time frame of which Washington complains was reasonable and did not violate his constitutional rights.

1.      Deliberate Indifference Standard

Under the Eighth Amendment, prisoners have a constitutional right to medical care.  *Estelle v. Gamble*, 429 U.S. 97, 103 (1976).  Prison officials may not act with deliberate indifference to the medical needs of their prisoners.  *Id.* at 104.  An Eighth Amendment claim has two components, one objective and the other subjective.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Comstock v.*

18

*McCrary*, 273 F.3d 693, 702 (6th Cir. 2002).

Under the objective component, "the plaintiff must allege that the medical need at issue is 'sufficiently serious.' " *Farmer*, 273 F.3d at 834. In *Farmer*, the Court held that the objective test requires that "the inmate show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* at 834; *see also Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004). Under the subjective component, "the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock*, 273 F.3d at 702.

## 2.    Application

In *Wilson v. Williams*, 961 F.3d 829 (6th Cir. 2020), the Sixth Circuit considered a habeas petition alleging deliberate indifference claims under the Eighth Amendment regarding the COVID-19 response at the Federal Correctional Institution in Elkton, Ohio (FCI Elkton). Due to the health risks of COVID-19 combined with its transmissibility under standard prison conditions, the *Wilson* court found that the objective prong of the deliberate indifference test was "easily satisfied." *Id.* at 840. As for the subjective prong, the Sixth Circuit found that while the defendants were aware of and understood the potential risk of serious harm, they were not deliberately indifferent to that risk. *Id.* The Sixth Circuit

19

noted that prison officials at FCI Elkton were:

> implement[ing] measures to screen inmates for the virus; isolat[ing] and quarantin[ing] inmates who may have contracted the virus; limit[ing] inmates' movement from their residential areas and otherwise limit[ing] group gatherings; conduct[ing] testing in accordance with CDC guidance; limit[ing] staff and visitors and subject[ing] them to enhanced screening; clean[ing] common areas and giv[ing] inmates disinfectant to clean their cells; provid[ing] inmates continuous access to sinks, water, and soap; educat[ing] staff and inmates about ways to avoid contracting and transmitting the virus; and provid[ing] masks to inmates and various other personal protective equipment to staff.

*Id.* at 841.

The Sixth Circuit concluded that through these actions, the prison "had

responded reasonably to the risk posed by COVID-19 and that the conditions at

Elkton cannot be found to violate the Eighth Amendment." *Id.*

> Here, while the harm imposed by COVID-19 on inmates at Elkton "ultimately [is] not averted," the [Bureau of Prisons (BOP)] has "responded reasonably to the risk" and therefore has not been deliberately indifferent to the inmates' Eighth Amendment rights. *Farmer*, 511 U.S. at 844, 114 S. Ct. 1970.  The BOP implemented a six-phase action plan to reduce the risk of COVID-19 spread at Elkton.  Before the district court granted the preliminary injunction at issue, the BOP took preventative measures, including screening for symptoms, educating staff and inmates about COVID-19, cancelling visitation, quarantining new inmates, implementing regular cleaning, providing disinfectant supplies, and providing masks.  The BOP initially struggled to scale up its testing capacity just before the district court issued the preliminary injunction, but even there the BOP represented that it was on the cusp of expanding testing.  The BOP's efforts to expand testing demonstrate the opposite of a disregard of a serious health risk.

*Id.*  The Sixth Circuit also noted that its decision was in line with its previous

20

decisions regarding responses to similar risks of harm, as well as sister circuits'

conclusions regarding similar responses to COVID-19.  *Id*.

Defendants point out that the MDOC's response to the COVID-19 pandemic

has been outlined in many cases and found to be adequate and therefore cannot

form the basis for a deliberate indifference claim.  (ECF No. 15, PageID.106-109

(citing *Robinson v. Huss*, No. 2:21-cv-71, 2021 WL 1884541, at *6–*8 (W.D.

Mich. May 11, 2021) and *Hinton v. Skipper*, No. 1:21-cv-480, 2021 WL 4859744,

at *4 (W.D. Mich. Oct. 19, 2021)).  They also note that similar claims against

Heidi Washington and prison warden defendants, alleging that those parties created

insufficient policies that exposed prisoners to potential injuries, have been rejected

by the courts.  (ECF No. 15, PageID.110 (citing *Winburn v. Nagy*, No. 2:20-CV-

11145, 2021 WL 5822097, at *5 (E.D. Mich. Nov. 19, 2021), *report and

recommendation adopted*, 2021 WL 5798032 (E.D. Mich. Dec. 7, 2021)).

As to the specifics of Washington's complaint, he does not allege the

personal involvement of Heidi Washington, McKee, Chapman, Stephenson, or

Steece in his alleged deprivations, nor that they disregarded the substantial risk of

COVID-19.  For instance, he alleges that staff did not know that COVID-19 had

reached Michigan at the time he was housed with an ill inmate, Perry, who was

believed to be exhibiting flu symptoms.  (ECF No. 1, PageID.7-8).  When

Washington tested positive for COVID-19 a week later, he was first housed in an

individual cell, and then placed in a cell with another COVID-19 positive prisoner. (*Id.*, PageID.8).  He does not allege that prisoners with the virus were knowingly housed in cells with healthy prisoners.

Washington also alleges, generally, that inmates at MRF are unable to socially distance and are not afforded adequate access to cleaning supplies. Similar arguments were rejected by the Sixth Circuit in *Dykes-Bey v. Washington*, No. 21-1260, 2021 WL 7540173, at *3 (6th Cir. Oct. 14, 2021).  There, the Sixth Circuit found that the prisoner-plaintiff failed to allege, "for example, that [the prison] had enough physical space to implement social distancing," or that "defendants knowingly housed COVID-19-positive inmates alongside any plaintiff[.]"  *Id*.  The Sixth Circuit reiterated that "what matters is whether the precautionary steps taken show that the defendants responded reasonably to the risks of COVID-19."  *Id*. (citing *Wilson*, 961 F.3d 829).

Washington also alleges that he observed multiple prisoners among the general population exhibiting COVID-19 symptoms but did not report it.  (ECF No. 1, PageID.10).  This does not show a knowing disregard by the defendants. Further, he alleges that cleaning supplies were minimal and watered down to the extent that they were rendered ineffective.  (*Id.*, PageID.11).  But this does not show a disregarded risk either; Washington does not state that adequate cleaning supplies were available and not distributed.  *See Dykes-Bey*, at *3.  He does allege

the personal involvement of Wright and Sanders in denying him cleaning supplies

because "they were the regular unit officers" and he was "told to 'ask the next

shift.' " (ECF No. 1, PageID.12). Even if true, as noted above, he did not exhaust

these claims against Wright or Sanders. As to his exhausted claims against Heidi

Washington, McKee, Chapman, Stephenson, and Steece, Washington has not

stated a plausible claim of deliberate indifference and therefore his claims against

them should be dismissed with prejudice.

## V.    Conclusion

For the reasons stated above, the undersigned RECOMMENDS that

defendants' motion to dismiss the complaint for failure to state a claim, and

alternatively for summary judgment, (ECF No. 15), be GRANTED, and that the

complaint be DISMISSED WITHOUT PREJUDICE as to Wright and Sanders, and

DISMISSED WITH PREJUDICE as to Heidi Washington, McKee, Chapman,

Stephenson, and Steece.

Dated: April 6, 2023                      s/Kimberly G. Altman
Detroit, Michigan                         KIMBERLY G. ALTMAN
                                          United States Magistrate Judge

## **NOTICE TO PARTIES REGARDING OBJECTIONS**

The parties to this action may object to and seek review of this Report and

Recommendation. Any objections must be filed within 14 days of service, as

provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).

Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the court determines that any objections are without merit, it may rule without awaiting the response.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of

24

Electronic Filing on April 6, 2023.

<u>s/Carolyn Ciesla</u>
CAROLYN CIESLA
Case Manager